Staples, J.
I do not deem it necessary to consider the question so elaborately discussed at the bar, whether or not this is a contract of hazard. In the view I take of this case, that question is not before this court for determination. It appears by the second bill of exceptions, that on the trial in the Circuit court, the plaintiff' offered evidence tending to prove that by the terms of the contract, the defendant was to take upon himself the risk of a deficiency in the land purchased by him, and conse *136 quently lie could have no claim for a deduction of the Pachas© money. On the other hand the defendant, introduced as a witness, proved that when he made the purchase he believed the tract to contain one thousand acres ; and he understood the plaintiff as guarananteeing that quantity. Upon this evidence and the written agreement, the .jury rendered a verdict for the plaintiff; and thereupon a motion was made for a new trial, and overruled. In such case this court is not authorized to interfere by granting a new trial. Upon familiar principles, recognized and approved in numerous cases, when there is a conflict of evidence an appellate court will never set aside a verdict where the court which tried the cause aud heard the witnesses, concurs with the jury, and has refused a new trial. Brugh v. Shanks, 5 Leigh, 598; Coleman v. Moody, 4 Hen. & Mun. 1, 18; Grayson case, 6 Gratt. 124.
It has been said, however, that allowing the evidence' all the weight claimed for it, conceding that it proves every fact it tends to establish, still the verdict is clearly erroneous. The argument in support of this view is, that although the defendant may have purchased the tract by the boundary, it does not necessarily follow that his purchase is a contract of hazard; thatvin his estimate of the value of the land, he was necessarily influenced by his estimate of the quantity, and a deficiency so gross and extraordinary as is exhibited here, is proof of a clear mistake of the parties, or of mistake on one side, and fraud or gross negligence on the other.
It is difficult to imagine a case where the purchaser, in the price he agrees to pay, is not influenced by his estimate of the quantity. And if. a mistake of this sort affords ground for equitable relief, it is clear there could no longer be a contract of hazard. We know, however, that such contracts, when fairly made and clearly established, are uniformly enforced by the courts. Hor is there any injustice in this principle of equitable *137 jurisdiction. If the vendee encounters the hazard of a deficiency, the vendor incurs that of an excess ; and it is impossible to say that this very hazard did not constitute an important element of the price. For whether the case be one of excess or deficiency, the mistake is not in the substance of the contract, but in relation to the very risk in the contemplation of the parties.
In the present case, it was in proof on the trial, that before the sale, the plaintiff informed the defendant that he (the plaintiff) did not know how many acres the tract contained, as he had bought it in several parcels ; it might run out a thousand acres or less. And further, that the defendant on several occasions and to various witnesses, admitted he had purchased the land by the boundary and not by the acre ; to use his own language, “'he had bought by the bunch for one thousand acres more or less.” It is also worthy of remark the-contract contains no provision for a survey; nor was any ever made or required, until after the institution of this suit, although two years had elapsed since the date of the sale.
It is true that the deficiency here is very considerable, but it is not greater than other cases of like character have exhibited, in which compensation has been refused by this court. Thus in Tucker v. Cocke, 2 Rand. 51, the lands fell short more than two thousand acres of the quantity they were supposed to contain. And in Russell v. Keeran, 8 Leigh, 9, the deficiency amounted to one hundred acres in a tract supposed to contain four hundred and five acres. Pendleton's ex'ors v. Stewart, 5 Call, 1, and Hull v. Cunningham, 1 Munf., 330, are also cases in which a gross deficiency appeared, and yet the application for relief was denied. The principle upon which all these cases were decided, is, that where the real contract is to sell a tract of land as it may contain more or less, fully understood to be so, the purchaser takes the tract at the risk of gain or loss by deficiency or *138 excess in the number of acres contemplated. 2 Lomax Dig. 63.
Under all these circumstances, I think the jury was well justified in finding that the defendant assumed the risk of a deficiency in the' tract of land. It only remains to inquire whether the parol evidence upon which the finding is based was properly admitted. That evidence consists chiefly of the admissions of the defendant after the sale, that his contract was for the purchase of the tract by its boundary and not by the acre. Many cases have been before this court involving the doctrine of compensation upon contracts for the sale of real estate. In many of them, parol evidence was received of the true understanding of the parties, whether a sale in gross or by the acre was intended, notwithstanding the existence of written articles evidencing the contract. In Jolliffe v. Hite, 1 Call 262; in Quesnel v. Woodtief & al., 6 Call 218; in Fleet v. Hawkins, 6 Munf. 188; and in Grantland v. Wight, 2 Munf. 178, such evidence was admitted without objection. In the first case, Judge Pendleton said, “ a court of equity will not he bound by the expression ‘ more or less ’ contained in deeds, but will resort to the real contract to ascertain what was the intention of the parties.” In Russell v. Keeran, 8 Leigh, 9, the vendor executed a title bond conditioned to make a good and sufficient deed to “a certain plantation containing four hundred and five acres, be the same more or less.” Upon a bill by the heirs of the vendee claiming compensation for a deficiency in the tract, the question arose, whether the sale was by the acre or in gross. Evidence was taken of the admissions of the vendee, that the sale was of the latter character. Judge Brockenbrough thought the evidence admissible on the ground of ambiguity in the terms of the title bond. The other judges expressed no opinion on the point, but concurred however, in holding that the vendee was not entitled to any abatement of the purchase money, *139 although the tract, upon an actual survey, turned out to he about 100 acres less than the estimated quantity.
The only case I have seen in which a doubt is expressed of the propriety of receiving parol testimony in this class of cases, is that of Bierne v. Ershine, 5 Leigh, 59. There the contract was for the sale of a tract of land containing one hundred acres, for the sum of two thousand dollars. Judge Carr said it would be wrong to let in parol evidence to explain or alter the written agreement, which must be taken uninfluenced by such evidence. The principle on which this case was decided, is obvious ; There was no question of mistake ; the terms employed were not merely descriptive of the land, but constituted a positive representation of quantity, which the vendor was bound to make good. Parol evidence showing that no such representation was in fact made or intended, would have been contradictory of the deed in its very terms and acording to its legal effect.
It has been said that Blessing's Adm’r v. Beatty, 1 Rob. R. 287, overrules the earlier decisions upon the subject of relief in cases of excess or deficiency. That case does not enunciate any new principle that I have been able to perceive. It certainly establishes no new doctrines in regal’d to the admissibility of parol testimony in controversies of this character. Eb such question arose in that case; nor was it discussed, or even alluded to. The decision was based solely on the language of the deed of conveyance. If parol testimony was offered with a view to establish some other contract de hors the deed, the record does not disclose the fact.
The opinion of Judge Baldwin has, however, in another view, an important bearing upon the question now being considered. lie announces with great clearness, the principles which control courts of equity in decreeing compensation in this class of cases. The sole foundation for such jurisdiction is said by him to be that of mistake, or mis *140 take on one side with gross deception or fraud on the other.
How when a party invoking this principle, seeks relief in a court of equity, wffiy should not the defendant he permitted to show first that there was no fraud nor deception,. and second, that although a mistaken estimate of the quantity was made by the parties, each agreed to encounter the hazard of such mistake, and to waive all right to compensation in any event. If the written agreement contains no guarantee or positive affirmation of quantity, it is' difficult - to perceive in what respect it is varied or altered by parol evidence establishing these facts.
In the present case the contract is for the sale of a tract of land “supposed to contain one thousand acres, more or less.” Such language cannot, upon any fair and reasonable construction, be understood as a positive affirmation of quantity. That it is to be regarded as mere matter of description, and not of itself giving the character of the contract is settled by the case of Russell v. Keeran, before cited, and Keytons v. Brawford, 5 Leigh 48; Stebbins v. Eddy, 4 Mason’s R. 414; Pendleton’s Ex’or v. Stewart, 5 Call 304; Winch v. Winebeck, &c., 1 Ves. and Bea. R. 375. Had the plaintiff intended to-affirm that the tract contained one thousand acres, or to give any warranty of quantity, he W'ould have used language expressive of such intention. He did not know how many acres the tract contained ; his purpose was to sell it as he had purchased it; he was, therefore, ■careful to use terms which would exclude the idea of ■any such warranty. Ho doubt he “supposed” the tract to contain the number of acres mentioned; and the ■defendant honestly believed the same thing; and each was influenced, doubtless, by this estimate in fixing the price to be paid. And if this were all, the transaction would present a clear case of mutual-mistake, requiring the interposition of a court of equity in behalf of the *141 injured party. For it is well settled that the employment of the words “more or less,” or “containing by estimation so many acres, more or less,” will not relieve the • vendor or vendee, as the case may be, from the obligation to- make compensation for an excess or deficiency beyond what may be reasonably attributed to small errors from variations of instruments or otherwise, unless indeed there be evidence to show that a contract of hazard was intended. In the absence of such evidence, it is to be presumed that the parties contract with reference to quantity. It is an important element in every agreement and prima fade must be intended to have influenced the price. It is, however, a mere presumption, which may be met and overthrown by proof that the pai’ties agreed to be governed at all events, by the estimated quantity. Such proof does not contradict or vary the deed, in any particular, in the case supposed ; it merely establishes an understanding collateral to the written contract; and makes it clear that no such mistake was made as furnishes ground for relief in equity.
In the present case, the defendant did not resort to a court of equity. He has thought proper to submit to a jury his claim to an abatement of the purchase money. In such case, the rules govei’ning in an equitable forum must apply, and the plaintiff permitted to rebut the claim, by any evidence which would be considered appropriate to his defence, had the defendanffelected to proceed by bill in equity. It has been said, however, that it devolved on the court, and not the jury, to construe the written agreement of the parties. If the defendant desired the court to construe the insti’ument, he could have effected his object by the appropriate motion. He did not do so, however. ■ He offered the deed in evidence to the jury, in support of his plea, thus invoking their consideration of its provisions. If any error was committed in this, the defendant has no just cause of complaint. •
*142 But the court did substantially construe the contract, “ Emitting the parol evidence adduced by the plaintiff. The court, in effect, declared that the title bond did not contain any warranty oí quantity; that the language useq therein was mere matter of description, and that parol evidence might properly be received of the real contract of the parties. In this respect, I think, the court was clearly right, for the reasons already given.
The third error assigned, is in the instruction given to the jury, that, according to the face of the bonds in suit, the plaintiff was entitled to recover the nominal amounts thereof, with interest from their respective dates. As the court is equally divided upon the proposition involved in this instruction, I shall content myself with a very brief consideration of the question. One of the bonds beai’3 date 23d June 1865,' and is for the payment, twelve months after date, of twenty-five hundred dollars in currency, at its specie value, with interest from the date. The other bond is payable two years after date, with substantially’the same provisions. It is insisted that, according to the true intent and meaning of the instrument, the obligor is only required to pay twenty-five hundred dollars in currency, at its specie value, when the bonds were executed. There are several objections, I think, to this construction. It is a settled rule, that where the language of the deed or covenant is obscure and uncertain, its provisions are to be takeu most strongly against the grantor or covenantor. The proposition now insisted on, violates this rule in construing the covenant most strongly against the covenantee. It violates another principle, equally well settled and approved, in estimating the value of the currency or commodity, as of the date of the contract, rather than the period of payment. Dearing's Adm’x v. Rucker, 18 Gratt. 426; Bierne v. Dunlap, 8 Leigh, 814.
It is impossible, looking alone to these bonds, to ascertain what the parties intended. The language is *143 not susceptible of a plain and satisfactory explanation. I think the safest rule, is to construe the covenant as a contract to pay twenty-five hundred dollai’s in currency - at all events, or to pay its value in specie at the maturity of the debt, at the option of the debtor. This construction derives support from the language of the written articles of agreement executed at the same time, and providing for the payment of the purchase money, by the same instalments as specified in the bonds, omitting, however, the stipulation as to the “ specie value ” of the currency. It is a rule of the courts, where there are two instruments between the same parties, made at the same time and constituing the same transaction, they may explain and control each other, though they do not expressly refer to each other. 2 Lomax Dig. 29, see page 540; Parson on Contracts, 593. It is difficult to believe that the parties intended to make two different contracts in regard to the payment of the purchase money. If it was understood that the obligor might pay more or less than the nominal amount of the currency according to its fluctuations in market, so important a provision would scarcely have been omitted in the written agreement for the sale of the land. As the language in the one instrument is plain, and in the other obscure, that which is plain should be adopted. Construing the two instruments together, I think the above is to be regarded as a contract to pay twenty-five hundred dollars in currency at all events, or to pay in specie a sum equal to that amount, if the debtor preferred it. Upon his failure to do so, the creditor was entitled to recover the entire amount of currency stipulated.
I am, therefore, of opinion the court did not commit an error in the instruction [given to the jury, and the judgment should be affirmed.
Anderson, J.
I would construe the contract, from the face of the bond, to mean that the medium of pay *144 ment was currency, but at a fixed value, as of its specie value the date of the contract. Upon any other construction, the terms 44 at its specie value” have no mean-mg. If you say those words relate to the time of payment, it seems to me they are utterly unmeaning. The contract is for the payment, twelve months after date, of $2,500 ; expressly to be paid in currency. "What does it matter to either party, what was the specie value of currency at that time—the time of payment—whether it was 20 per cent, below par, or 50 per cent., or at par, it mattered not. It had no bearing upon the contract; it was solvable by the payment of $2,500 in currency. The contract would be precisely the same if those words were stricken out. With them, or without them, the contract was solvable by the payment of $2,500 in currency ; and they are words, inserted in the contract, without meaning. This construction would violate a well established rule—that a deed should be construed so that every part may stand together; 44 TJt res valeai majis quam pereat” It cannot be presumed that these important words were inserted by the parties, without meaning. It seems to me that they can have no meaning unless you construe them as having relation to the date of the contract ; and with that construction, they have a very important meaning. It means that the obligee was willing to take, and the obligor was willing to give, $2,500 in currency, at its then specie value. But that if currency became less valuable, the obligee was not willing to take $2,500 in currency ; and if it appreciated, the obligor was not willing to pay $2,500 in currency.
It implies, also, that as the contract was not solvable for twelve months/ and was not a specie contract, but solvable in currency, neither party was willing to risk the fluctuations of the currency ; which are well known to have been very great, before and after the 23d of June-1865, the date of this obligation.- JSTothing, perhaps, was more uncertain at'that time, than what would bethé *145 state of the currency twelve months or two years hence; and the parties wanted something more stable. The obligor was not willing to give a bond solvable in specie ; and the obligee was not willing to take one, solvable in currency, without qualification. But one was willing to give $2,500 in the currency of the country, at its then specie value; and the other was willing to take it. They must be presumed to have known what was the specie value of currency at the date of the contract; and they concluded to make that the standard, so that it would not be a contract of hazard, on either side. If currency was then at a depreciation of 50 per cent., and twelve months after that date, was of the same specie value, the contract would be solvable by the payment of $2,500 in currency. But if currency had depreciated, say for illustration, 10 per cent., then the contract could only be solvable by addiug 10 per cent, to the $2,500. If it had appreciated 10 per cent, it could be solvable, by the payment of $2,500, less 10 per cent. In either case, the obligee would receive, and the obligor would pay, in currency, the same value, specie being the standard. I can give no other construction to this contract which will give any meaning or force to the words, * ‘at its specie value.” And this construction gives effect and harmony to the whole instrument, and to every word, and comports with what is known to have been the fluctuating character of currency at the date of the contract,-and the great uncertainty as to what would be its value in future. I am, therefore, of opinion, that there is error in the instructions given by the court to the jury, as shown by the third bill of exceptions.
As to the second bill of exceptions, I think the construction of the article of agreement was a question of law, and if the jury, by their verdict, put a construction upon it which the instrument does not warrant, it was *146 proper for the court and its duty, to set aside the verdict and award a new trial.
Upon a fair construction of the article of agreement, are the words, “supposed to contain 1000 acres more or less,” merely descriptive of the Craig tract of land, or designed to represent the quantity. I- do not think they can be taken as descriptive. The land had been before described as Craig’s “ tract of land, on Smith’s creek and Casper creek, in the county aforesaid, except the church and one acre of ground,” which he reserves. How this language is sufficiently descriptive. Craig’s tract of land, on certain creeks, in a certain county, upon which the church is situated. The tract, with the exception of the church and lot of one acre, was to be conveyed to Caldwell whenever the purchase money was paid. The articles then set out what Caldwell was to give for it, $6,500, and the tract of land on which he-lives, containing 150 acres, each to make to the other a good deed. It is then added, “ Craig’s tract supposed to contain 1,000 acres more or less.” Are these words of description, or words of representation as to quantity f That they were intended to give Caldwell some idea of the quantity of land he was to get, for the consideration he had agreed to give, I think there can be no doubt. They were not necessary to be put there, as words of-description. And it is difficult to perceive how they are descriptive. “Supposed to contain 1,000 acres more or less,” does not describe any thing, and does not describe-this tract, for it contains only 800 acres.
I do not regard it as a guaranty, that there are 1,000 acres in the tract. • But I regard it as a representation made by the seller to the buyer, that- there is near about 1,000 acres in the tract. And such a representation made by the owner of the land to the buyer, doubtless had an influence on the mind of the latter in computing the value of it.
I do not, however, regard it as a guaranty of any cer *147 tain quantity; and if there had been a small deficiency of twenty or even fifty acres, I should not be disposed to disturb the verdict on this ground. But where the defi- ■ cieney is so great, amounting to one-fifth of what it was computed, or supposed to contain, it seems to me that even in a case where there is no fraud, it is such a mistake as a court of equity ought to correct; and that the purchaser was entitled to some abatement of price, or compensation for it.
As to the parol testimony, I will only remark, that such testimony ought not to weigh as “a feather, if in conflict with the written agreement. The uncertainty of memory, and the liability to misapprehension, as to what a party really said in a casual conversation, does not ■entitle such testimony to much weight; and to none at all when in conflict with the written agreement. And in this case it would not have been admitted if it was regarded as in conflict with the written agreement. I do not regard it as contradicting the written agreement. But the whole of this testimony may be true, and the defendant’s special plea also true. Admitting that Caldwell made the representations attributed to him, that he had bought by “boundary,” or “by the bunch,” yet, the averments of the plea may be true, “that the plaintiff represented to the defendant that the tract of laud contained 1,000 acres, more or less, and by reason of said representations, the said defendant was induced to buy the said tract of land.” I will go further, and maintain, that if the article had expressly declared that the sale was in gross, and not by the acre, still the averments of the plea may be true. And they, are true. They are not contradicted by the ‘parol evidence; and they are proved by the highest evidence; evidence which is necessarily true, and, therefore, conclusive. Those averments of the plea are proved by the article of agreement, which evidences the contract between the parties, under their hands and seals. It appears upon the face of *148 that deed, that the representation averred in the plea,. totidem verbis, was made at the time of making the con- ■ tract; and there is not a particle of the parol evidence to the contrary ; and if there was, it would have been inadmissible. It is easy to conceive that one may purchase a tract of land in gross, and may be induced to-give the price for it agreed upon, because he believes it contains such an area ; and if that belief is induced by the representations of the seller, even by mistake, and without fraud, and it turns out that he was mistaken, and that there was a great deficiency in quantity, or if there was a mutual mistake, a court of equity will relieve against the mistakes, by vacating the contract, or abating the price. Or if the defence is made by equitable plea in a court of law,’a jury may give compensation in damages. And in this case, the other averment of the plea, that the tract of land, which was represented to contain about 1,000 acres, contained only 800 acres, is proved beyond all question, by the best evidence the case could admit of—an actual survey.
I am of opinion, therefore, whether the jury erred or not upon the question of law, as to the construction of the contract, their verdict is clearly contrary to the evidence in the cause ; and that it ought to have been set aside, and a new trial awarded. _ I am, therefore, for-reversing the judgment.
The other judges concurred in the opinion of Staples, J., except upon the last point considered by him, on which the court was divided.
Judgment affirmed.